**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**STEVEN KNECHT**
Vonderheide & Knecht, P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW R. FALK**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| OTONIEL MURO-ESPARZA, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 79A05-1111-CR-589 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE TIPPECANOE CIRCUIT COURT
The Honorable Donald L. Daniel, Judge
Cause No. 79C01-1101-FB-2

**June 15, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Otoniel Muro-Esparza ("Muro-Esparza") appeals from his convictions and sentences, following a guilty plea, for Conspiracy to Commit Robbery and Robbery, both as Class B felonies,[1] and for Theft, as a Class D felony.[2]

We affirm.

**Issues**

Muro-Esparza raises two issues for our review:

1.    Whether his convictions for robbery and theft violate Indiana's constitutional prohibition against double jeopardy; and

2.    Whether his fifteen-year total executed sentence is inappropriate.

**Facts and Procedural History**

The factual basis supporting the guilty plea reveals that, on July 17, 2010, Muro-Esparza, Brandon Harris-Crider, and Michael Gosnell agreed to rob a Village Pantry in Tippecanoe County.  Gosnell stayed outside to serve as a lookout.  Muro-Esparza and Harris-Crider, who was armed with a knife, concealed their faces and entered the store.  The men threatened the clerk and held the knife on him while they stole cigarettes, lottery tickets, and cash.

The State charged Muro-Esparza with Conspiracy to Commit Robbery, Robbery, and Theft.  On July 29, 2011, Muro-Esparza pled guilty to all three counts without the benefit of

---

[1] Ind. Code § 35-41-5-2; Ind. Code § 35-42-5-1.

[2] I. C.§ 35-43-4-2.

a plea agreement. The trial court entered judgments of conviction on all counts.

At the sentencing hearing, the court identified Muro-Esparza's guilty plea and his "relatively low risk of re-offending" assessment score as mitigating circumstances. (Tr. at 22.) As aggravating circumstances, the court first identified his history of criminal activity and then continued, "A second aggravating circumstance is the defendant's history of illegal alcohol and drug use and the court notes that this is a mandatory minimum non suspendable [sic] case." (Tr. at 22.) Deciding that the aggravating circumstances outweighed the mitigating circumstances, the court imposed concurrent fifteen-year sentences for Conspiracy to Commit Robbery and for Robbery, and a concurrent two-year sentence for Theft. Muro-Esparza now appeals.

## Discussion and Decision

### I. Double Jeopardy

Muro-Esparza first argues that his convictions and sentences for robbery and theft violate Indiana's constitutional prohibition against double jeopardy. The State responds that he has waived that claim by pleading guilty. We agree with the State.

Here, Muro-Esparza asks us to "reverse" his conviction for theft. Appellant's Br. at 13. But it is well-established that a conviction based upon a guilty plea may not be challenged by a direct appeal. Tumulty v. State, 666 N.E.2d 394, 395 (Ind. 1996). Rather, the proper avenue for challenging one's conviction pursuant to a guilty plea is through a petition for post-conviction relief. Hayes v. State, 906 N.E.2d 819, 821 n.1 (Ind. 2009); Tumulty, 666 N.E.2d at 396.

3

The Tumulty court observed multiple policy grounds for the principle that a defendant may not challenge his conviction based upon a guilty plea in a direct appeal. First, the plea brings to a close the dispute between the parties, and to permit an appeal would make settlements difficult to achieve. Tumulty, 666 N.E.2d at 396. Also, from a practical standpoint, a high percentage of appeals are disposed of by guilty pleas and, allowing a direct appeal of convictions following a guilty plea would potentially dramatically multiply the caseload of our appellate courts by offering appeals to thousands of admitted felons. Id. Finally, such claims often require a factual inquiry that appellate courts are not equipped to administer. Douglas v. State, 878 N.E.2d 873, 878 (Ind. Ct. App. 2007) (citing Tumulty, 666 N.E.2d at 396.)

In addition, a defendant who pleads guilty is generally not allowed to raise a double jeopardy challenge to his convictions. McElroy v. State, 864 N.E.2d 392, 396 (Ind. Ct. App. 2007), trans. denied. Our Supreme Court explained, "[D]efendants who plead guilty to achieve favorable outcomes give up a plethora of substantive claims and procedural rights, such as challenges to convictions that would otherwise constitute double jeopardy." Id. (quoting Lee v. State, 816 N.E.2d 35, 40 (Ind. 2004)). Nevertheless, in McElroy, our Court permitted a double jeopardy challenge where, as here, there was no plea agreement and, thus, the guilty plea was not entered to achieve an advantageous position.

In accordance with precedent cited above, McElroy was decided in the context of a petition for post-conviction relief, not a direct appeal of the convictions. But see Graham v. State, 903 N.E.2d 538 (Ind. Ct. App. 2009) (on direct appeal, reviewing claim of sentencing

4

error couched as "double jeopardy"). The issue presented was whether guilty plea counsel was ineffective for failing to make a double jeopardy objection during the sentencing hearing. McElroy, 864 N.E.2d at 394. Accordingly, the post-conviction court had first resolved the "predicate factual dispute" regarding double jeopardy. Mapp v. State, 770 N.E.2d 332, 334 (Ind. 2002) (vacating Court of Appeals decision finding double jeopardy violation based upon the face of the charging instrument). The post-conviction court had also determined whether counsel was ineffective.

In sum, Muro-Esparza's double jeopardy claim is a challenge directed toward the theft conviction itself. Therefore, the proper avenue for raising his claim is a petition for post-conviction relief. Thus, we do not address Muro-Esparza's double jeopardy argument.

## II. Inappropriate Sentence

Muro-Esparza also contends that his fifteen-year sentence is inappropriate in light of the nature of the offenses and his character. Under Appellate Rule 7(B), this "Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."[3] Our role is to "leaven the outliers" rather than to achieve a perceived "correct" result in each case. Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008). It is the defendant's burden to persuade this court that his sentence is inappropriate.

---

[3] Within his 7(B) argument, Muro-Esparza cites the trial court's mention of a "minimum non-suspendable" sentence. (App. at 25.) The pre-sentence investigation report includes a statement that, at the time of sentencing, the court "may wish to consider" that "[t]he sentence is minimum non-suspendable due to the felony convictions in the State of Virginia." (App. at 41.) As the trial court did not separately number the item as an aggravator, we assume that the trial court was referring to that statement, not identifying a discrete aggravating circumstance. Muro-Esparza has not demonstrated reversible error.

5

Anglemyer v. State, 868 N.E.2d 482, 494 (Ind. 2007), clarified on reh'g, 875 N.E.2d 218 (Ind. 2007).

Here, Muro-Esparza was sentenced to fifteen years imprisonment each for his Conspiracy to Commit Robbery and Robbery convictions, for which the advisory sentence is ten years and the range is six to twenty years. See Ind. Code § 35-50-2-5. He was also sentenced to two years imprisonment for Theft, which carries an advisory sentence of one and a half years and a range of six months to three years. Ind. Code § 35-50-2-7. Thus, Muro-Esparza received enhanced but not maximum sentences.

Regarding the nature of the offenses, Muro-Esparza and two other men agreed to rob a Village Pantry. One of the men stayed outside to keep watch. When he gave the all-clear signal, Muro-Esparza and a third person covered their faces, entered the store and threatened the clerk with a knife while they stole cigarettes, lottery tickets, and cash. Although Muro-Esparza emphasizes that the clerk was not harmed physically, one man held the knife on the clerk while they were in the store. The potential psychological effect of that action is not inconsequential.

Considering Muro-Esparza's character, we observe that he pled guilty without the benefit of a plea agreement and he was working for approximately four months before being incarcerated. Muro-Esparza also insists that he consistently told police the truth about his involvement. But he committed the crimes in July of 2010 and, according to the Probable Cause Affidavit, was contacted by police in January of 2011, at which time he initially identified himself as "David Muro." (App. at 14.) Accordingly, Muro-Esparza's cooperation

6

with police was not as complete as he suggests.

The most disturbing character trait, however, is Muro-Esparza's obvious lack of respect for the law. The pre-sentence investigation report indicates his "Alien Status" as "Illegal." (App. at 36.) Muro-Esparza reported drinking "8-10 beers, once a month" starting at the age of seventeen, when he was a minor. (App. at 41.) He also used marijuana two to three times a week between the ages of seventeen and twenty-one and used two to three Lortabs a couple times a month between the ages of twenty and twenty-one.

Significantly, although he was only twenty-one years old at the time of the guilty plea hearing, Muro-Esparza had already been convicted in Virginia of "Grand Larceny" and "Break and Enter to Commit Larceny," both felonies, and of two counts of misdemeanor "Petit Larceny." (App. at 38.) The significance of a defendant's prior criminal history in determining whether to impose a sentence enhancement varies based upon the gravity, nature and number of prior offenses as they relate to the present offense. Smith v. State, 889 N.E.2d 261, 263 (Ind. 2008). Although Muro-Esparza's previous offenses may stem from the same incident, they include serious offenses and involve stealing, as do the convictions in this case. Muro-Esparza seems unwilling to learn from past mistakes. In addition, the larceny entries from 2008 read "Not from a Person." (App. at 38.) The crimes here involved a threat to a person, an escalation of societal harm. Muro-Esparza's behavior patterns demonstrate a continued disdain for the law and an unwillingness to change. Considering the nature of the offense and his character, we are not persuaded that his sentences are inappropriate.

Affirmed.

7

ROBB, C.J., and MATHIAS, J., concur.