# FIRST DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

_____

No. 1D18-0516

_____

MICHAEL DESHON DANIEL,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

_____

On appeal from the Circuit Court for Escambia County.
John L. Miller, Judge.

May 6, 2019

PER CURIAM.

Appellant led police on a high-speed car chase through a residential neighborhood after an officer attempted to pull him over for running a stop sign. The chase ended when Appellant's car collided with a minivan and came to rest in a nearby yard. The driver of the minivan was killed in the crash and one of the passengers was seriously injured. The other passengers in the minivan also suffered injuries, as did several persons in the yard where Appellant's car came to rest. Appellant fled the scene on foot but was apprehended a short distance away.

Appellant was charged with multiple offenses arising out of this criminal episode, including vehicular homicide and fleeing or

eluding.[1] The victims listed in the information for the fleeing or eluding count were the deceased driver, the injured passengers, and the injured persons in the yard where Appellant's car came to rest; but, for reasons not explained in the record, the jury instructions for the fleeing or eluding count omitted "serious bodily injury" as an element of the offense.[2]

Appellant's sole defense at trial was that he was not driving the car that collided with the minivan. This defense was extremely weak and was rejected by the jury, which found Appellant guilty "as charged" on all counts. The trial court adjudicated Appellant guilty on all counts and sentenced him to concurrent 25-year prison terms on the vehicular homicide and fleeing or eluding counts and to time-served on the other counts.

On appeal, Appellant argues that his dual convictions for vehicular homicide and fleeing or eluding are barred by the judicially-created "single homicide rule" because due to how the jury was instructed on the fleeing or eluding count, both convictions were necessarily based on the death of the minivan's driver and "there can be but one penalty imposed for causing the

---

[1] We use the phrase "fleeing or eluding" as a shorthand reference for the first-degree felony offense of fleeing or attempting to elude a law enforcement officer in an agency vehicle with siren and lights activated, at high speed, causing death or serious bodily injury. *See* § 316.1935(3)*(b)*, Fla. Stat. (2016).

[2] The jury instructions provided in pertinent part:

To prove the crime of Fleeing or Eluding a Law Enforcement Officer, the State must prove the following five elements beyond a reasonable doubt:

\* \* \*

5. As a result of [Appellant's] fleeing or eluding at high speed, or wanton disregard for safety, *he caused the death of another person.*

(emphasis supplied).

death of a single victim." *State v. Cooper*, 634 So. 2d 1074, 1074 (Fla. 1994); *see also Houser v. State*, 474 So. 2d 1193, 1197 (Fla. 1985) ("Florida courts have repeatedly recognized that the legislature did not intend to punish a single homicide under two different statutes."). We agree with this argument based on *Crusaw v. State*, 195 So. 3d 422 (Fla. 1st DCA 2016), in which we held that the single homicide rule precludes dual convictions for vehicular homicide and careless driving causing death or great bodily injury where both offenses involved the same victim.[3] *Accord McCullough v. State*, 230 So. 3d 586, 593 (Fla. 2d DCA 2017) (holding that the single homicide rule bars dual convictions for vehicular homicide and fleeing or eluding when the offenses involve the same victim).

The appropriate remedy under these circumstances is—as Appellant argues—to vacate the first-degree fleeing or eluding conviction and remand for entry of a judgment of conviction on the lesser included offense of second-degree fleeing or eluding under section 316.1935(3)*(a)*, Florida Statutes. *See Cooper*, 634 So. 2d at 1074-75 (holding that a defendant convicted of DUI manslaughter may not also be convicted of driving with a suspended license and carelessly or negligently causing death, but he may also be convicted of a lesser included offense of the latter crime); *Linton v. State*, 212 So. 3d 1100, 1103 (Fla. 5th DCA 2017) (vacating defendant's first-degree fleeing or eluding conviction under the single homicide rule where the defendant was also convicted of felony murder and remanding for entry of a judgment convicting

---

[3] We recognize that in *McKinney v. State*, 51 So. 3d 645 (Fla. 1st DCA 2011), *review denied*, 95 So. 3d 213 (Fla. 2012), we held that fleeing or eluding is not a "homicide offense" subject to the single homicide rule because the offense can be committed without causing a death. However, because the offense at issue in *Crusaw* could also be committed without causing a death, the holdings in *McKinney* and *Crusaw* conflict and the later decision (*Crusaw*) controls. *See R.J. Reynolds Tobacco Co. v. Marotta*, 214 So. 3d 590, 604 (Fla. 2017) (citing *Little v. State*, 206 So. 2d 9, 10 (Fla. 1968), for the proposition that "where intradistrict conflict exists, the decision later in time overrules the former as the decisional law of the district"); *State v. Walker*, 593 So. 2d 1049, 1049-50 (Fla. 1990) (same).

the defendant of second-degree fleeing or eluding).  Appellant is also entitled to resentencing.[4]  *See Linton*, 212 So. 3d at 1103 ("The trial court shall also conduct appropriate proceedings to resentence Appellant based on his modified convictions.").

VACATED and REMANDED with directions.

WETHERELL and OSTERHAUS, JJ., concur; WINOKUR, J., concurs in result only with opinion.

---

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

---

WINOKUR, J., concurring in result only.

Alma Hardy died as a result of Daniel's car colliding into the minivan she was driving. Several other persons suffered serious bodily injury as a result of the collision. The so-called single homicide rule should not have been implicated in this case at all: the death of Alma Hardy was sufficient to support Count I (vehicular homicide), and the serious bodily injury to any or all of the six other persons was sufficient to support Count II (fleeing or attempting to elude a law enforcement officer at high speed causing serious bodily injury or death). There is no dispute that the collision caused the death of Alma Hardy and the serious injury to the others. While it is true, as the majority notes, that the jury instructions on Count II inexplicably indicated only that the fleeing caused death (omitting serious bodily injury), that instruction error is harmless beyond a reasonable doubt. Nonetheless, in spite of the fact that the two counts plainly did not implicate the single homicide rule because Count II could have been based on the serious injury to multiple victims (and not the

---

[4] This does not mean that Appellant's overall sentence will change because the trial court is free to reimpose the 25-year sentence on the vehicular homicide count.

4

death of Ms. Hardy), I find that we are constrained to reverse Daniel's conviction under the authority of *Lee v. State*, 258 So. 3d 1297 (Fla. 2018), which prohibits us from considering the evidence, the jury instructions, the verdict form, or any matter other than the charging document alone, in determining whether Daniel improperly suffered multiple punishments for the same act.

I.

The State charged Daniel in Count I with vehicular homicide/leaving the scene of the accident, pursuant to section 782.071(1)(b), Florida Statutes, and identified the deceased victim, Alma Hardy. In Count II, the State charged Daniel with fleeing or attempting to elude a law enforcement officer at high speed causing serious bodily injury or death pursuant to section 316.1935(3)(b), Florida Statutes, and named as victims "ALMA L HARDY and/or RICHARD LEE HARDY and/or TOMIKI MONIQUE HARDY and/or LAQUIA ANDRONETTE REDMOND and/or SONJA DENISE HAYES and/or MARTIN HENDRICKS and/or RICHARDO HARDY." The evidence showed that none of those victims other than Alma Hardy died as a result of Daniel's driving, but that all six of them suffered serious bodily injury.

At the beginning of trial, the trial court informed the jury that Count II alleged "fleeing or attempting to elude a law enforcement officer in an agency vehicle with sirens and lights activated at high speed causing death or serious bodily injury," and the State's opening statement in reference to Count II stated that the crash "resulted in both death and serious bodily injuries." The State presented multiple victims who testified about the serious injuries they suffered in the crash, which included multiple concussions, a crushed skull, and scarring; the crash landed one victim in an intensive care unit for several days.

After the parties rested, the trial court and parties reviewed the verdict form and agreed that Count II required a finding of "serious bodily injury or death." The trial court proceeded to review the jury instructions, and Daniel similarly agreed that the jury would be instructed that Count II required "serious bodily injury or death." The State, during closing arguments, referred to Count II, noting the multiple serious injuries and that Daniel "caused serious bodily injury or death." Daniel not once disputed the death

or serious injuries caused in the crash, arguing only that the State's evidence that he was the driver was insufficient.

The trial court then read the jury instructions, which stated that Count II required a finding that Daniel's actions "caused the death of another person," for unknown reasons omitting the "serious bodily injury" language. Daniel stated that he had no objections to the instructions as read.

The jury found Daniel guilty as charged on all counts. The jury foreperson checked next to the following offense in Count II: "Guilty of Fleeing to Elude a Law Enforcement Officer – Siren and Lights Activated with High Speed or Reckless Driving Causing Serious Bodily Injury or Death, as charged."

Daniel argued at sentencing that it was impermissible to sentence him on both Counts I and II under the authority of *State v. Cooper*, 634 So. 2d 1074 (Fla. 1994), which applied the single homicide rule to approve the reversal of convictions for DUI manslaughter and driving while license suspended and carelessly or negligently causing death, where there was only a single death. The premise of Daniel's argument was that both Count I and II were based on the death of Alma Hardy. The trial court rejected Daniel's argument.

## II.

Vehicular homicide, as its name implies, requires death of a victim. § 782.071, Fla. Stat. For this reason, Alma Hardy was listed alone as a victim in Count I. Conversely, the offense of fleeing or attempting to elude a law enforcement officer at high speed causing serious bodily injury or death, does not require the death of victim; serious bodily injury of a victim is sufficient to support this offense. § 316.1935(3)(b), Fla. Stat. *See also* Fla. Std. Jury Instr. (Crim.) 28.8(a). For this reason, all victims were listed in Count II, including the victims who were seriously injured but not killed.

## III.

Daniel notes that the jury instructions for Count II omitted the "serious bodily injury" language and only indicated that the

6

jury had to find that Daniel's fleeing an officer "caused the death of another person." Daniel argues, and the majority accepts, that this formulation implicates the single homicide rule because only one victim died, and her death was an element of Counts I and II. I disagree. Jury instruction errors are generally subject to harmless error analysis. *Hunter v. State*, 8 So. 3d 1052, 1071 (Fla. 2008). In *Hunter*, the instructions used "and/or" between the names of the appellant and his co-defendants in each element of the offenses requiring the appellant's name. *Id.* at 1070. He argued that this erroneous instruction allowed the jury to convict him "solely upon a finding that a codefendant's conduct satisfied an element of the offense." *Id.* The supreme court acknowledged the error, but found it harmless due in part to overwhelming evidence. *Id.* at 1070-71; *see also Victorino v. State*, 23 So. 3d 87, 101 (Fla. 2009) (finding the same error harmless due to other instructions given, overwhelming evidence of guilt, and the jury's ability to understand the verdict); *Fleming v. State*, 88 So. 3d 288, 289 (Fla. 1st DCA 2012) (holding that absence from the jury instructions of any question regarding facts that had to be found by the jury pursuant to *Apprendi v. New Jersey*, 530 U.S. 466 (2000), was harmless in light of the evidence, which showed that the jury would have found the stated factors if they had been in the instructions); *Lindsay v. State*, 1 So. 3d 270 (Fla. 1st DCA 2009), *rev. den'd* 6 So. 3d 52 (Fla. 2009) (permitting imposition of a minimum mandatory sentence even though the court erroneously failed to give the jury a special interrogatory to decide the question of actual possession of a firearm because the evidence showed that no reasonable jury could have found that he did not possess the firearm); *Noel v. State*, 125 So. 3d 243 (Fla. 4th DCA 2013) (affirming conviction in spite of the court's erroneous failure to instruct the jury on an essential element of the crime, on the ground that the instruction error was harmless).

Similarly, I find it beyond dispute that a rational jury would have found that Daniel's fleeing caused serious bodily injury to one or more of the victims indicated in Count II. The information, the opening statement, the evidence, the closing arguments, and the verdict form all indicated that the fleeing caused serious bodily injury to several victims, and demonstrate that the instruction error was an oversight. More importantly, Daniel never disputed that a crash occurred or that several people were seriously injured

7

as a result; he only argued that the State did not adequately show that he was the driver. For this reason, the failure to include the serious bodily injury language in the jury instruction was harmless beyond a reasonable doubt. *See State v. DiGuilio*, 491 So.2d 1129, 1135 (Fla. 1986). As such, it appears that this case does not implicate the single homicide rule at all because Count II is supported by serious injury to several victims, not just the death of Alma Hardy.

IV.

Even though the evidence in this case is overwhelming that Count II is supported by the injuries to persons other than Alma Hardy, this result is foreclosed by the recent decision of *Lee v. State*. *Lee* imposed an extraordinary approach to multiple-punishment issues that we are obliged to apply here. Under *Lee*, in analyzing whether Daniel would improperly suffer multiple punishments for the same act, the trial court was not to consider the undisputed evidence of serious injury, nor the fact that Daniel never disputed that the crash caused serious injury, nor the fact that the jury found, as shown by the verdict form, that Daniel's fleeing caused "Serious Bodily Injury or Death, as charged." Instead, the court was required to look past all these matters and look only to the charging document in determining whether conviction for Counts I and II constituted multiple punishment. *See Lee*, 258 So. 3d at 1304 (holding that, in determining whether multiple convictions "are based on the same conduct for purposes of double jeopardy, the reviewing court may consider only the charging document"). The question in multiple-punishment issues is no longer whether a defendant received multiple punishment for the same act, it is whether different acts can necessarily be discerned from the charging document alone. Regardless of whether the evidence that Daniel's fleeing caused serious injury was overwhelming, regardless of whether the evidence is clear that Count II did not involve only the death of Alma Hardy, if we look only at the information, it is "impossible to know," *id.*, whether Daniel was convicted only of killing Alma Hardy in two separate counts. Accordingly, the convictions violate the single homicide rule. Therefore, *Lee* compels us to reverse Daniel's conviction. We should do so in the manner indicated in the majority opinion.

8

## V.

The explicit holding of *Lee* requires the reviewing court to consider only the charging document in determining "whether multiple convictions of solicitation of a minor, unlawful use of a two-way communications device, and traveling after solicitation of a minor are based upon the same conduct for purposes of double jeopardy," consistent with *State v. Shelley*, 176 So. 3d 914 (Fla. 2015) (involving "solicitation and traveling after solicitation based upon the same conduct"). *Lee*, 258 So. 3d at 1299, 1304. There appears to be no principled reason not to apply the *Lee* holding to any same-conduct multiple-punishment claim. Nonetheless, to be clear on this matter I believe we should certify a question to the supreme court asking whether *Lee* applies to all same-conduct multiple-punishment claims, or only to the soliciting and traveling claims indicated in that decision.

———————————————

Jason Cromey of Cromey Law, P.A., Pensacola, for Appellant.

Ashley Moody, Attorney General, and Sharon Traxler, Assistant Attorney General, Tallahassee, for Appellee.